## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

HERITAGE VINTAGE SPORTS
AUCTIONS, INC.

          Plaintiff,

    v.

ATLANTA NATIONAL LEAGUE
BASEBALL CLUB, LLC

          Defendant.

CIVIL ACTION NO. 3:24-cv-02141-K

## FIRST AMENDED COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

    **NOW COMES** Heritage Vintage Sports Auctions, Inc. ("Heritage"), by and through the undersigned attorneys, for its Complaint against Atlanta National League Baseball Club LLC ("Braves, LLC"), allege upon information and belief as follows:

### I.      PARTIES, JURSDICTION, AND VENUE

    1.  Heritage was founded in 2007 and is incorporated in the state of Texas, with its principal office in Dallas, TX.  Heritage is in the business of conducting public auctions and private sales of art and collectible items, including sports memorabilia.

    2.  Braves, LLC is a limited liability company with its principal place of business at 755 Battery Ave SE, Atlanta, GA 30339, and can be served through its registered agent CSC of Cobb County, Inc., at 192 Anderson Street SE, Suite 125, Marietta, GA 30060. Braves, LLC is wholly-owned by Atlanta Braves Holdings, Inc., a Nevada corporation with principal offices in Englewood, Colorado. Braves, LLC, upon information and belief, operates the Atlanta Braves Major League Baseball franchise.

    3. The property underlying these claims are baseball memorabilia, namely: (a) the three bases and home plate which Hank Aaron touched while running out his 715th career home run on April 8, 1974 (the "715 Bases"); and (b) seven other items of Braves memorabilia such as game-

used jerseys, bats and a Braves cap (the "Other Braves Memorabilia", collectively the "Consigned Items"). The Consigned Items are all presently located at Heritage's offices in Dallas, TX. The items in dispute will be auctioned online and live in Dallas, Texas between August 23-25, 2024.

4. This Court has subject matter jurisdiction of this action pursuant to 28 USC § 1332 because there is complete diversity of citizenship between the parties and because the amount tin controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over Braves, LLC pursuant to the Texas long-arm statute codified in Texas Civil Practice & Remedies Code §17.042. Braves, LLC transacts business in Texas. Moreover, Braves, LLC's conduct upon which the claims herein are based was directed at Heritage in Texas.

6. Venue is proper in Northern District of Texas, Dallas Division under 28 USC § 1391, because the events that gave rise to this Complaint occurred, and are continuing to occur, in Dallas County within this Northern District of Texas, Dallas Division, and witnesses thereto reside therein.

## II.   FACTS

7. In August 2024, Heritage announced that it would be conducting an auction of sports memorabilia including multiple items connected with the career of Hank Aaron, and the auction to begin on August 23, 2024. These items included the Consigned Items.

8. None of the Consigned Items are the property of Heritage, but were consigned by third parties unrelated to one another or Heritage. Heritage entered consignment agreements with each of the five consignors, in which Heritage committed to offer the Consigned Items for sale at public auction.

9. On August 16, 2024, Heritage's Dallas office received a cease and desist letter ("C&D Letter") from an attorney purporting to represent Braves, LLC, demanding that Heritage remove the 715 Bases and the Other Braves Memorabilia on the grounds that Braves, LLC questioned the authenticity of and/or title of all of the Consigned Items. Braves, LLC further demanded that Heritage turnover documentation identifying the highly confidential consignor information and

any other evidence supporting title to and/or authenticity of all of the Consigned Items. Finally, the C&D Letter demanded that Heritage disclose Braves, LLC's allegations to potential bidders at the August 23 auction and, somewhat inconsistently with that demand, that Heritage cancel the auction sale of the 715 Bases and Other Braves Memorabilia altogether and transfer possession of both groups of items to Braves, LLC immediately.

10.  Without any notice to Heritage, or opportunity for Heritage to rebut the allegations, Braves, LLC or its agents provided copies of the C&D Letter and/or leaked its contents and allegations to various national media outlets, including but not limited to the Atlanta Journal Constitution newspaper ("AJC"), with the intention of causing those media outlets to publish stories promoting and amplifying Braves, LLC's allegations about the 715 Bases and Other Braves Memorabilia, and specifically about Heritage's behavior in accepting those items and offering them for auction sale.

11. Braves, LLC's actions were with malice and intent to cause maximum damage to Heritage's reputation. Heritage received the C&D Letter at 5:27 p.m. on Friday, August 16, 2024 and by 6:36 p.m. that same Friday evening, Heritage was receiving requests for comment by members of the press. Braves, LLC never intended to resolve their dispute with Heritage. Braves, LLC never intended to provide Heritage with the opportunity to address or resolve these allegations. Braves, LLC even waited to send the C&D Letter until after the close of business on Friday, further hindering Heritage's ability to mitigate damages over the weekend.

12. The commercial market for sports memorabilia is a modern development of the past few decades. In the 1970's and earlier (when these Consigned Items were all created/used) a jersey, bat or cap was collected by a fan and saved as keepsakes, not collectible investments. This makes authenticating historic sports memorabilia of the utmost importance and requires expertise that brings both consignors and bidders to an auction house such as Heritage, one of the largest auctioneers of sports memorabilia in the U.S. Braves, LLC fully intended to publicly malign Heritage by not only claiming that Heritage was offering for auction items without good title, but also – and far more damaging – Braves, LLC intended to malign Heritage's reputation for vetting and selling authentic sports collectibles by making public statements questioning the

authenticity of the consigned items without cause. Braves, LLC's claims in the C&D Letter even go so far as to unreasonably and baselessly imply that only they can authenticate Braves historic memorabilia.

13.  On August 16, the AJC and other media outlets published stories referring to the C&D Letter and quoting extensively from it.  As Braves, LLC intended, the C&D Letter itself caused media outlets to cast doubt upon the legality of Heritage's sale of the 715 Bases and the Other Braves Memorabilia without verifying whether or not the allegations in the C&D Letter were true.

14.  Braves, LLC's allegations as to the Other Braves Memorabilia contained in the C&D Letter are false. The C&D Letter was intended to bully Heritage into cancelling a lawful sale of these items and turn over to Braves, LLC property lawfully belonging to Heritage's multiple different consignors. Upon information and belief, Heritage alleges that, at the time of sending the C&D Letter, Braves, LLC knew or should have known the allegations therein were false and that the demands asserted therein were baseless.

15. The Braves Major League Baseball Franchise has been sold at least twice since 1974, when Heritage's consignor acquired the 715 Bases with the consent of the then-owner.  Braves, LLC knows that it has no legal right or authority to challenge or rescind that transfer of title. In fact, as is clearly stated in the Heritage listings that Braves, LLC attached to their C&D Letter, the Consigned Items are dated 1974 or earlier, including uniforms worn by the 1957 Milwaukee Braves and the 1948 Boston Braves.  The Consigned Items were consigned by five different consignors. The Other Braves Memorabilia were acquired lawfully by four different consignors, none of whom has ever had any connection to the Braves or to the consignor of the 715 Bases.[1]

16. While the 715 Bases have never before been sold publicly, each of the Other Braves Memorabilia has been sold at public auction at least once previously, and twice in the case of one of the items, since 2006 and without any objection from Braves, LLC. Braves, LLC knows that it

---

[1] The 715 Bases were consigned by the son of a former Braves employee who acquired the 715 Bases in 1974 with the knowledge and express consent of the Atlanta Braves then-owner.

has no legal basis for challenging the title of Heritage's four different consignors, all of whom acquired their items in the open sports memorabilia marketplace over an 18-year period. The C&D Letter's public statement that Braves, LLC is "investigating" the authenticity and title of the Other Braves Memorabilia is false and misleading, made either with knowledge or willful ignorance, and the clear intention to discourage bidders on these items. Any cursory investigation of the Other Braves Memorabilia would reveal the fact that these items have been trading in good faith for years. In fact, the C&D Letter references another public auction of sports memorabilia from 2002, evidencing Braves, LLC can find such auction records when it suits them.

17. Even the demand by Braves, LLC for documentation of transfers of ownership for the Other Braves Memorabilia is disingenuous; it is common knowledge that baseball bats and similar game-used items are given away at, sometimes even during, a baseball game and without written documentation. The items had minimal value at the time because the sports memorabilia industry did not exist as it did today and these were merely keepsakes, not valuable collectibles. Clearly, this demand is to discourage potential bidders and consignors by raising the possibility that Heritage would be required to disclose confidential customer information. Braves, LLC must be deliberately ignoring the history of their own sport because they could not reasonably believe that baseball teams will be entitled to claw-back decades-old keepsakes once they have become valuable just because the individual collector did not obtain a written receipt back in the 1940's or '50's.

18.  The C&D Letter as much as admitted that it has no evidence to question the authenticity of and/or title to the Other Braves Memorabilia.[2] The C&D Letter merely states that Braves, LLC is investigating the Other Braves Memorabilia and publishes the legal liabilities

_____

[2] The C&D Letter provided a few factual assertions that caused Braves, LLC to question the authenticity of the 715 Bases, namely that one of the real bases is purportedly in the Baseball Hall of Fame. Heritage has delayed the sale of the 715 Bases while it investigates the authenticity and title issues, but said issue does not extend to any of the Other Braves Memorabilia.

"if" Braves, LLC uncover any evidence undermining authenticity or title. 17. Between the originally publication of the C&D Letter on August 16 and August 20, 2024, Heritage has engaged in multiple conversations with Braves, LLC to resolve the alleged concerns – without disclosing confidential consignor information. Even though Braves, LLC have told Heritage that they will relinquish their claims to the Other Braves Memorabilia – it's clear they cannot identify any basis for these claims – they continue to publicly assert questions of authenticity of and/or title to the Other Braves Memorabilia. Braves, LLC have taken no steps to mitigate the damage caused by publicizing their baseless accusations against Heritage. Instead, Braves, LLC is using these baseless accusations as leverage to force Heritage to deliver the 715 Bases to Braves, LLC, which would be a breach of its consignment agreement.

19. Braves, LLC continues to demand possession of the 715 Bases without establishing any claim of title. Despite asserting that the 715 Bases must be stolen if they left the possession of Braves, LLC, no evidence that the 715 Bases were in the possession of or transferred to Braves, LLC has been produced. Further, Braves, LLC admit that they allowed the sale by a third party of what they believed was one of the 715 Bases in 2002, but again have no proof they sold the alleged base. Braves, LLC's demand for possession of the 715 Bases must be resolved before Heritage may fulfill its consignment agreement to auction the 715 Bases.

20.  Additionally, between the originally publication of the C&D Letter on August 16 and August 20, 2024, multiple news publications have spread the false and damaging statements made by Braves, LLC, including but not limited to Forbes, Sports Illustrated, Sports Collectors Daily, and Fox.  The publication of the C&D Letter, as well as the media stories Braves, LLC intended to be published as a result of the C&D Letter, have harmed Heritage in various ways, including (a) damage to Heritage's reputation for honesty and integrity in selling authentic items with good title; (b) damage to Heritage's relationships with the consignors of the Other Braves Memorabilia; (c) damage to Heritage's relationships with other consignors to the auction containing the 715 Bases and Other Braves Memorabilia, whose property may sell for less as a result of doubts created by the C&D and subsequent media coverage; (d) damage to Heritage and Heritage affiliates' relationships with bidders at all Heritage auctions, who may doubt whether

the items Heritage is selling are authentic and not stolen; and (e) damage to Heritage and its affiliates as a result of lower commissions from items selling for lower amounts and reduced future consignments.

### III.    CAUSES OF ACTION

### COUNT I – DEFAMATION

21.  Heritage reasserts and incorporates by reference each and every allegation contained in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

22.  Braves, LLC or its agents composed and published the C&D Letter.

23.  The C&D Letter contained statements of fact relating to Heritage which were false.

24.  Braves, LLC knew the statements were false, and made the statements maliciously with the intent of causing Heritage financial harm and forcing Heritage to agree to turn over property belonging to its multiple consignors to Braves, LLC

25.  Braves, LLC's statements caused Heritage actual damages as described herein, in an amount to be proven at trial.

### COUNT II – BUSINESS DISPARAGEMENT

26.  Heritage reasserts and incorporates by reference each and every allegation contained in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

27. Braves, LLC or its agents composed and published the C&D Letter. The C&D Letter contained statements of fact relating to Heritage which were false.

28. Braves, LLC knew the statements were false, and made the statements maliciously with the intent of causing Heritage financial harm and forcing Heritage to agree to turn over property belonging to its consignors to Braves, LLC

29.  Braves, LLC's statements caused Heritage reputational harm as described herein, and Heritage was damaged in an amount to be proven at trial.

### COUNT III – INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

30.  Heritage reasserts and incorporates by reference each and every allegation contained in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

31.  Braves, LLC published the C&D Letter knowing that the 715 Bases and the Other Braves Memorabilia were not the only items in Heritage's auction commencing August 23, and that Heritage had pending contracts with the other consignors to sell their property through Heritage.

32.  Braves, LLC knew that publication of the letter would cause the other consignors to lose confidence in Heritage and, perhaps, to withdraw consignments from that auction in fear that bidders would shun Heritage as lacking honesty and integrity.

33.  Heritage has had, and will have, actual damages as a result of Braves, LLC's conduct.

## COUNT IV – INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

34.  Heritage reasserts and incorporates by reference each and every allegation contained in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

35.  Braves, LLC published the C&D Letter knowing that the allegations contained therein would damage Heritage's reputation for honesty and integrity, and would thereby hinder Heritage's ability to obtain consignments for future auctions, and discourage bidders from bidding in Heritage's sales for fear that the items being offered by Heritage were illegal or inauthentic.

36.  Heritage has had, and will have, actual damages as a result of Braves, LLC's conduct.

## COUNT V – DECLARATORY JUDGMENT

37.  Heritage reasserts and incorporates by reference each and every allegation contained in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

38.  Pursuant to Texas Civil Practice and Remedies Code § 37.001, *et seq.*, the Court may declare rights, status, and legal relations whether or not further relief is or could be claimed, and before or after breach of contract.

39. Heritage seeks a judgment declaring that Braves, LLC has no claim of title to the 715 Bases.

40. Heritage further seeks a declaratory judgment that Braves, LLC's assertions that the Other Braves Memorabilia are not authentic are without foundation.

## IV.   CONDITIONS PRECEDENT

41.    All conditions precedent to the maintenance of each cause of action described above have been performed, satisfied, occurred, or rendered moot.  All notices, complaints, and/or demands were timely and properly given in such a manner as to fully comply with applicable law.

42.    In the alternative, as to any such terms, conditions, or requirements, Braves, LLC waived them, is estopped from asserting them, and/or Heritage substantially complied with them.

## V.     PRAYER FOR RELIEF

WHEREFORE, Heritage prays for judgment as follows:

1.   That Heritage be awarded its damages, in an amount in excess of $75,000, the jurisdictional minimum of this Court, plus the costs of mitigating Heritage's reputational harm, plus attorney's fees and costs;

2.   That Heritage be awarded exemplary damages from Braves, LLC's intentional conduct;

3.   Declaratory judgment against Braves, LLC, as requested herein;

4.   For pre-judgment and post-judgment interest as provided by law; and

5.   For such other and further relief as this Court deems proper.


Dated:  August 22, 2024

                                      By:  */s/ Thomas E. Shaw*

Thomas E. Shaw
State Bar No. 18152750
J. Taylor Shaw
State Bar No. 24106422
THE LAW OFFICES OF
THOMAS E. SHAW, P.C.
9304 Forest Lane, Suite N252,
North Building
Dallas, Texas 75243-6238
Telephone: 214-221-7429
Facsimile: 214-221-7447
Email: lotes@lotesattys.com
Email: taylor@lotesattys.com

**Attorneys for Plaintiff Heritage Vintage Sports Auctions, Inc.**